May it please the court, this court should reverse the district court's decision for three reasons. First, the Marion Circuit Court is entitled to sovereign immunity. Second, King's request would fundamentally alter the nature of the Marion County Alternative Dispute Resolution Plan. And third, King failed to show that the Marion Circuit Court intentionally discriminated against him. First, sovereign immunity applies here because Mr. King's claims have no constitutional dimension. This case does not implicate the fundamental right to access the courts, and thus Tennessee v. Lane is not controlling. Mr. King had full access to a scheduled hearing in front of the court at which he would have been provided an interpreter. Mediation in this case was not mandatory, and Mr. King had a clear... Well, it originally was, correct? Pardon? The court ordered mandatory mediation, correct? Mr. King requested mediation, and the court did order it, yes. Okay. But then the court... Who asked for it? He asked for it originally? Yes, Mr. King. It was part of a widespread program in the domestic courts, right? Yes. Okay, and the court orders it. And the court ordered it, but then the court made it voluntary after that. Because he was asking for the accommodation, right? Because they made it voluntary so that there would be no question that Mr. King had access to the courts. And what's important when you're first thinking about sovereign immunity... Everybody else has access to the mediation program, right? Any person has access to the mediation program. Any litigation. In this case, the program is not a guarantee that Mr. King can participate in mediation for free. This is not pro bono mediation. What this is is this is not like the Seventh Circuit's mediation program, where the Seventh Circuit has an employee who does mediation at no charge to the litigants. And in that kind of a program, or if the Marion Circuit Court does that, then you would agree they would have to provide an ASL interpreter? In regards to access to the court, there is a question, but for purposes of the argument, yes. But in this case, the court litigates. So if the court says, okay, we're a little short on manpower, judicial manpower, to run this mediation program and handle the mediations, so we're going to extend the program by identifying a number of certified mediators. We approve them, we assign them, and they report back to us. I've got to say, that feels an awful lot to me, like simply an extension of the judicial services that are provided. In this case, so mediation at the state court level in civil cases, it is not performed by the court. It is not performed by an employee of the court. It's a private. But in those cases, the parties bear the cost of mediation. Right. And misbehavior is subject to sanction by the courts, correct? Yes. Misbehavior, the court still exercises jurisdiction, just like a discovery, a sanction for violating a discovery order. Can I ask you, would the plaintiff under your theory have a claim under Title III of the Americans with Disabilities Act against the mediator if he refused a request to provide an interpreter? So if a private party, if an individual, certainly Title III is a more appropriate avenue against the private mediator. Do you think he would have such a claim? I don't know. That's the logic of your position, isn't it? The logic of our position is that sovereign immunity cannot be abrogated because the court doesn't guarantee mediation free of charge except in pro bono situations, and this is not a pro bono situation. So a way to think about it is what benefit is being given by the court, right? If in state court civil mediation, if this program was not here, the parties would be responsible for the full cost of mediation. And they would not have to do it either, right? They would not have to do it either. Well, it may be required. The court can require it at the cost of the litigants. And that goes to the important distinction between you have to identify the constitutional right at issue, right? There are two constitutional rights that are relevant in this case, right? The first constitutional right is access to the courts. And the reason Lane doesn't apply here is Lane is a criminal case, and the right of access to the courts is not an enumerated right but is instead a situational application of other constitutional rights. And Lane identifies four of those rights under the Sixth Amendment, the Due Process Clause, the First Amendment. They identify specific rights which are encompassed in that for criminal cases. In civil cases, it's much different. So the question about access to the courts is what is the due process right? This is a civil case in which what are the stakes again? Mr. King is seeking a modification of his term. It's whether he gets to spend time with his daughter, correct? Yes. Pretty important, right? Certainly, that is an important claim. So you're not trying to distinguish Lane on the grounds that it's a criminal versus a civil case, are you? I am trying to distinguish that because the Due Process Clause requires different process for an individual in a criminal case as opposed to an individual in a state court civil case. How about a criminal case in which you're facing a potential fine of $500? Contrast that with a civil domestic case in which the state is seeking to terminate your parental rights. So in a case that involves a... There are criminal, in a criminal case... Or in which an ex-spouse is trying to suspend all visitation. How about that? What I would say is that the Sixth Amendment and the First Amendment apply differently to criminal cases than they do to civil cases. And I think the Bodie v. Connecticut case is a great case that talks about the difference between civil and criminal for the purposes of access to the court. And in Bodie v. Connecticut, a woman is seeking to have a dissolution of marriage in a civil case. And the court finds that that is the only way for her to dissolve her marriage, is through a court proceeding, right? But that court also talks about that in civil cases, the court is one way that is encouraged to resolve the issue. But in this case, Mr. King had full opportunity to come into the court and have a mediator, or have an interpreter, excuse me. So he was not denied access to the court. And he could not be denied that access, could he? Not under the due process clause, but that's not... He has to have an interpreter, right? In a court proceeding. In a court proceeding. But that's not... Does your, Mr. Hunter, does your argument depend on the fact that the court chose to waive this mandatory mediation for the plaintiff? No. Does it matter? Does that fact matter then? The choice to waive is actually only important because it shows that the court is mindful of that right to access the courts. So your position then is that the court can mandate this mediation under its supervision without providing ADA accommodation? It can mandate and then waive. No, mandate. Mandate, yes. That's what you just told me, right? Yes, the court can mandate. And here's why, right? Here's why the court can mandate that. That doesn't go to access to the courts. Access to the courts, he has that hearing available. That goes to the question of equal protection, right? And in order for there to be an equal protection claim, when a state distributes a benefit, then equal protection scrutiny applies to that benefit if it's not applied to one party or it is to another. And in that case, you have to look at the benefit that is being provided by the state. And in this case, under the enabling statutes, the benefit that is being provided is not free mediation. It's not mediation without any cost. What it is is it's a subsidy for a portion of the fee for the hourly rate of the mediator. But that's for the benefit of the court, isn't it? Isn't this mediation? Mediation in this case. I'm not familiar with the broad sector methods. A long time ago, there was a couple of child custody cases where the judge is very happy to have some mediator talk to the children, do some other things that the court doesn't either have the expertise or the ability to do. So that's what I always thought what mediation was about, where you put it before someone. In this particular case, it's apparently so unusual for someone who is deaf that, you know, he had to bring in his stepfather, I believe, who apparently did whatever needed to be done as far as interpretation. So he got the, I will call it the benefit or detriment or whatever you want to call it, with the mediation. And I don't even know what happened to the result of that. So, as you were saying, the mediation benefits all parties and the program recognizes that it benefits the parties, it benefits the courts. But when we're talking about equal protection and the benefit that is given by the program, right, the program gives a portion of the fee. It does not guarantee mediation. It's not a pro bono mediation program in that sense that Mr. King didn't qualify for pro bono mediation. He qualified for... So, see, it's mandated, but pro bono will get you off the hook of paying. Yes. Otherwise, you got to do it. But this is not pro bono. I understand. This program provides a portion of the fee, a subsidy. And that subsidy is provided on the basis of income. It's not provided on the basis of disability. It's provided on the basis of income. And Mr. King received that benefit, and so there's no equal protection. He received the benefit when he brought in his stepfather. No, he received the benefit of the program when he received a portion of the fees. Oh, okay. You're talking about the money now. Yeah, because the program is not guaranteeing mediation. And even if this is... even if the mediation was considered... the actual mediation was considered a program of the court in that regard, the congruence and proportionality test does not allow for the ADA to abrogate sovereign immunity in this case. And the reason is because it changes the state's legal obligations under the Constitution. The purpose of the congruence and proportionality test is to distinguish between valid prophylactic legislation that's designed to address a specific constitutional right and a redefinition of the constitutional right. And in this case, the ADA redefines the constitutional right by changing the standard from rational basis to heightened scrutiny. And we can see in the City of Bernie case, in the Kimmel case, in the Garrett case, that the Supreme Court has a problem with when the level of scrutiny is changed. And in this case, not only is it changed, but it's changed in a very broad way. The court in Hibbs spoke about narrow targeting of a statute. Here, the ADA says that any program in which the government interacts in this way, it changes the level of scrutiny for any program. And so ultimately though, if we get to the congruence and proportionality test, the reason that it's not congruent and proportional is because it changes the legal rights which the City of Bernie and Garrett both say that Congress cannot do. And I'll reserve the rest of my time for rebuttal. Certainly. Mr. Hunter? Ms. Chauvin. Good morning. May I please the court? If I may, I'd just like to clarify a few issues about the modest means program from the last argument. This is a modest means program, and the local rule is that all domestic cases, regardless of income, are required, they're mandated to mediation. So regardless of income, a litigant has to, in a domestic case, go to litigation, or go to mediation. And what happened in this case is that Mr. King was trying to move it along, and he motioned so that he could participate in the modest means program. And the modest means program is subsidized by the funding and the funding that comes from the filing fee. So every litigant in a domestic case in Marion Circuit Court pays towards that funding, and then it comes back out on a pro rata basis. And he did qualify for the modest means program. Modest means is something above pro bono, I guess. Yes, so he pays a portion, it's subsidized, and it's on a pro rata basis. They file a financial declaration, and it's determined how much each litigant will pay, or if they qualify for the program. And he did qualify for the program. But regardless of the program, of the modest means mediation program, he would still be required, pursuant to the local rule, to participate in mediation. Counsel, how is he required to participate in mediation when the state judge expressly said that he wasn't? Well, my point is the local rule requires that all cases and domestic cases, that they are required, and they can waive it for absent, for good cause. However, waiver in this issue, preclusion is... I'm just thinking about what happened in this case to Mr. King. Yes. The state judge said mediation was not essential. Am I misunderstanding? That's true. I was just comparing to the local rule, that all in domestic cases... We have to figure out what happened to King, and he was told mediation wasn't essential. Right? It seems to me we might have very different consequences if the court said everybody has to mediate in order to get an adjudication. But at least as I understand it, the court said to King, no, you don't have to mediate. I'll just give you an adjudication. Absolutely. However, in this instance, preclusion cannot and is not a proper accommodation within the meaning, definition, and intent of Title II. Moreover, the ADA applies to all services and programs or activities of a public entity and not just to those that are mandatory. The fact that this service was extended to Mr. King by the Marion Circuit Court... I don't think, counsel, that the initial question is what the ADA applies to. But whether something comes within what the Supreme Court said in Tennessee against Lane was a fundamental right, at least as I understand the Supreme Court's rules. Title II can't be applied to an objecting state body unless the plaintiff is seeking to vindicate the Constitution directly, right? And that's the fundamental right question of Lane. So I think we need to start there rather than with an argument about how we would proceed if there were no problem about sovereign immunity. Okay, well, the mediation program is a judicial service as contemplated implicating Title II. And Title II prohibits discrimination by public entities in the provision of the services... Maybe we're talking past one. As I said, the question for Tennessee against Lane is not what Title II provides. The question, as I understand the majority opinion to have framed it, is whether what is being provided constitutes a fundamental right of access to the courts. That's what I think we need to focus on. Yes, it is access to the courts. The modest means program is a judicial service for several reasons. The Marion Circuit Court here retains full authority over the program and relies upon private mediators and lawyers to perform the mediation function. It's important to note that in Indiana courts, the power to mediate is allocated in some courts to magistrates, and so if there's not an outside interpreter, thereby underscoring that mediation is a court service. The Indiana Supreme Court has definitively... I must say, counsel, you're just not remotely addressing what concerns me. Maybe you don't plan to. But the question is whether a particular thing is a fundamental right of access to the court. Would it violate the Constitution for Indiana to abolish this mediation program? Would it violate the modest means program? Would it violate the Constitution to abolish the mediation program? Would abolition of the mediation program deprive someone of a fundamental right of access to the court? It's twofold. There's this modest means program itself that helps those that don't have enough money to participate, and then there's mediation that can be required but not a part of this modest means mediation program. So, yes, and if litigants... So your answer is yes, that if, say, the state of Alaska has never had a domestic relations mediation program, it is right now in violation of the Due Process Clause? No. Okay, then your answer to my question should be no. What I'm stating is if they are mandated to attend mediation and they do not have the funds to. Look, I began this sequence of questions by saying that if mediation were a conditioned precedent to access to the court, then I can understand how it's part of the fundamental right. But I take it as given that the court told King that he did not have to mediate, so it was not a conditioned precedent. True, but it's still a service of the court, and it's a judicial service. Right, and then you seem to then say there is no difference between any service of the court and something that's part of the fundamental right of access to the courts. It did seem to me, perhaps mistakenly, that the majority opinion in Tennessee against Lane was trying to distinguish between the set of all conceivable court-related services and those services that were essential to the fundamental right of access to the courts. Do you see such a distinction? Yes, but he said... Could you articulate what that distinction is as you see it? Because every time I ask this question, you come back to just say, well, this is a court-related service. What do you see as the distinction between the set of all court-related services and those that are part of the fundamental right of access to the courts? So if Mr. King is not able to participate in modest means mediation but for his disability, then it's fundamentally unfair to him because everyone else can participate in the program. I'm asking an abstract legal question. How would you articulate the difference between the set of all court-related services and the subset of those court-related services that are part of the fundamental right of access to the courts? Well, this is access to the courts. You're saying it's a benefit to the court. Yes. This is where I think this distinction is made. It's a benefit to the court, which is what I would assume, because there are certain areas of expertise that you have people who do mediation and know something about and can work with both parties. They're neutral parties, so to speak, I guess. The court is also, but you've already said now, you said it's a benefit to the court. And to the litigants because it helps them work out the case. Well, but as Judge Easterbrook says, it's a fundamental right. It should be, yes. Thank you. Thank you, Ms. Schovanec. Ms. Zoll. May it please the court. Dana Zolle on behalf of the United States. This is a straightforward ADA case. Marion Circuit Court refused to provide King with a sign language interpreter that he needed so that he could participate in the court's mediation program, just like any individual without a disability. Instead, King had to rely on family members who were not qualified to interpret to help him seek custody of his daughter. The district court here correctly determined that Marion Circuit Court violated Title II because the mediation program at issue is a service programmer activity of the circuit court. And it also correctly determined that King's Title II claims were not barred by 11th Amendment immunity. The United States Supreme Court recognized in United States v. Georgia that there need not be a fundamental right at issue for Congress to have abrogated 11th Amendment immunity. In that case, the court instructed lower courts in cases that involve a Title II violation but no violation of a 14th Amendment fundamental right to nevertheless determine whether Congress abrogated state sovereign immunity in that particular class of cases under Title II. In this class of cases, implicating the accessibility of judicial services, the Supreme Court has recognized that Congress abrogated state sovereign immunity in Tennessee v. Lane. This case implicates the accessibility of judicial services. This was a service that the court offered. This was a service programmer activity of the circuit court. Why isn't the waiver of the obligation to go through mediation a sufficient answer to Mr. King's claim? The answer to that is twofold. First, Marion Circuit Court had an obligation under Title II and its implementing regulation to provide an auxiliary aid or service where necessary to allow an individual with a disability to access and participate in and benefit from the program services or activities that the court offers. So here, simply waiving the obligation to participate in mediation did nothing to enable him to participate. It did nothing to allow him to benefit from this program. And as Counsel for Marion Circuit Court stated, this program benefits all parties involved. But more to the point, nothing in Title II or its implementing regulation limits the application of that statute to cases involving mandatory services, programs, or activities. Instead, courts have consistently applied that statute in cases involving voluntary services, programs, and activities. Right. I don't have a disagreement with your statutory arguments. My concern is the constitutional point that Judge Easterbrook has been raising. Well, again, under even the Eleventh Amendment, there's no distinction here between voluntary cases or mandatory cases. In Tennessee v. Lane, for instance. Why not? I thought the majority in Lane was quite clear that there had to be some part of a fundamental right of access to the courts. Now, I understood the first part of your argument is that I've either misunderstood Lane or Lane is no longer good law. But if that is correct, if one still has to show that there's some fundamental right of access involved, how does a service that is not necessary to obtain a judicial decision part of the fundamental right of access? Well, Tennessee v. Lane actually contemplated this category of judicial services as a broad category, including the right to serve on a jury or the right to be a spectator in court proceedings. Those are not fundamental rights, of course. But it contemplated those as falling within this class of cases that the Supreme Court held Congress had abrogated Eleventh Amendment immunity within. But here, of course, the right that's implicated is this fundamental right of access to judicial services. But beyond that, as I said, the Supreme Court recognized in United States v. Georgia that there need not be a fundamental right in this particular case for Congress to have abrogated state sovereign immunity. There just needs to be this broader Fourteenth Amendment, this history of discrimination more broadly under the Fourteenth Amendment for this to be a class of cases that Congress... So you think that Lane has been overruled? No, Lane... That we should just not pay any attention to what the majority opinion said because they emphasized the fundamental right of access to the courts over and over and over. That's right, absolutely. That's how they summed up their holding. Right, and we argue that this case falls squarely within Tennessee v. Lane as this case also implicates the accessibility of judicial services, this class of cases involving access to services that the court offers to adjudicate legal disputes.  And that's exactly what this case involves. King sought to participate in this... So could you articulate... Maybe you don't see any distinction at all. Could you articulate a distinction between all court services and those that are part of the fundamental right of access to the courts? The Supreme Court in Tennessee v. Lane articulated... I didn't ask about the Supreme Court. I'm asking you, that is, what is the position of the executive branch of the United States government? Is there such a distinction? And if there is, what is it? The right to access of the courts includes the right to access judicial services that are designed in the administration of justice. Is the United States saying there is no distinction at all between all court-related services and the fundamental right of access to the courts? No. Is it the position that there is no such distinction? No. All right. If there is such a distinction, please articulate what it is. The distinction is... Cases involving access to the courts and involving this fundamental right involve the adjudication or the vindication of legal rights. Involvement in the court process, in some sense. Being on a jury, attending court proceedings as a spectator, of course, vindicating your rights in court proceedings or in mediation services. Here, this case, of course, falls within that sphere. But more broadly, it also... And how, given the state judge's statement, that it's unnecessary to participate in mediation? I'm sorry, what was the question? I think we have completely lost one another now, counsel. Thank you very much. Thank you. Anything further, Mr. Hunter? One quick note. I think the Supreme Court in Bodie v. Connecticut illustrates, provides for, in civil cases, the fundamental right of access to the court is the access to the court. And in this case, Mr. King had a full opportunity to come before the court and have an interpreter. And the Marion Circuit Court respectfully requests that this court reverse the district court's decision. Well, do you look at that as part of a fundamental right? Pardon me? The right to access to mediation. Access to mediation is not a constitutional right. It's not a due process right. It's not, when the individual has full access to the court, mediation is not required. Is it your view that the state has a rational basis for discriminating against the disabled in its court services? It has a rational basis to not pay for an out-of-court proceeding, not pay an interpreter for an out-of-court proceeding. But here, that's a question about the ADA, and we don't even get to the ADA. I'm asking it in constitutional terms. So in the constitutional terms? Yes. Pardon me. Can the state discriminate against the disabled with respect to non-essential? Yes, with a rational basis, under the Equal Protection Clause, with a rational basis. And you rely on what for that? Celeborn, the Celeborn case, the city of Celeborn. It's in our briefs. Thank you. There are no further questions. Thank you very much, counsel. The case is taken under advisement.